# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

SANDRA SULLIVAN,
        Plaintiff,

v.                                                                    Case No. 07-C-1137

AUTHOR SOLUTIONS, INC.
d/b/a AUTHORHOUSE,
        Defendant.

## DECISION AND ORDER

Plaintiff Sandra Sullivan brings this copyright infringement action against defendant Author Solutions, Inc., doing business as "AuthorHouse," alleging that defendant printed and distributed copies of her book without authorization. Defendant moves to dismiss the action for lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief may be granted. I have subject matter jurisdiction pursuant to 28 U.S.C. § 1338(a), among other statutes.

## I. BACKGROUND

Plaintiff is the author of book <u>Green Bay Love Stories and Other Affairs</u>, which describes her personal experiences with the certain members of the Green Bay Packers. On December 30, 2003, plaintiff entered into a distribution agreement in which she conferred on defendant the exclusive right to publish, distribute and sell the book. The distribution agreement stated that Indiana law governed "any dispute arising from the relationship between the parties to this Agreement." (Distribution Agreement at 3.)[1] The agreement also

---

[1]The distribution agreement is attached to the Complaint as Exhibit A.

contained a provision requiring that the parties mediate or arbitrate any disputes in Monroe County, Indiana. Plaintiff retained all copyrights to the book, and on January 26, 2005, plaintiff registered her copyright with the United States Copyright Office.

At some point, plaintiff became dissatisfied with defendant's performance under the distribution agreement and threatened to invoke the agreement's arbitration clause. On March 31, 2005, the parties entered into a settlement agreement which, among other things, ended their business relationship. In exchange for $16,500, plaintiff released defendant "from any and all claims, demands and causes of action, past or future, asserted or unasserted, known or unknown" arising out of the distribution agreement. (Settlement Agreement § 5.)[2] The release returned all rights associated with the distribution, production and sale of the book to plaintiff. Like the distribution agreement, the release contained a choice of law provision selecting Indiana law, but unlike the distribution agreement, it contained no arbitration provision or forum selection clause.

After the parties terminated the distribution agreement, defendant continued to send plaintiff royalty checks and statements for books sold through its distribution system, which led plaintiff to suspect defendant of producing and distributing unauthorized copies of her book. Plaintiff consulted her attorney, who had a member of his staff, Kathy Malmberg, attempt to purchase copies of the book through the internet and at stores located in the Milwaukee area. Malmberg was able to purchase copies from three "brick-and-mortar" retailers in the Milwaukee area, and one copy over the internet from Amazon.com, which shipped the book to her. One of the brick-and-mortar retailers had the book in stock when

---

[2]The settlement agreement is attached to the Complaint as Exhibit C.

-2-

Malmberg shopped for it, and the others obtained it by special order. The copyright page of the books purchased by Malmberg indicate that defendant printed them. This led plaintiff to file the present suit.

## II.  PERSONAL JURISDICTION

Fed. R. Civ. P. 12(b)(2) governs defendant's motion to dismiss for lack of personal jurisdiction. When a defendant brings a Rule 12(b)(2) motion, the plaintiff has the burden of proving personal jurisdiction. Dorf v. Ron March Co., 99 F. Supp. 2d 994, 996 (E.D. Wis. 2000). If material facts relating to personal jurisdiction are in dispute and the court holds an evidentiary hearing, the plaintiff must establish personal jurisdiction by a preponderance of the evidence. Purdue Research Found. v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 782 (7th Cir. 2003). In the present case, however, neither party requested an evidentiary hearing, choosing instead to rely on their written submissions. Thus, plaintiff must simply make out a prima facie case of jurisdiction. Id.  She is entitled to the resolution in her favor of all disputes concerning relevant facts in the record. Id.

I have personal jurisdiction over defendant if Wisconsin, the state in which this court is located, may exercise personal jurisdiction over defendant. This is so because unless a federal statute provides otherwise (and the Copyright Act does not), a federal court cannot exercise personal jurisdiction over a defendant unless a state court of general jurisdiction within the district court's state could have. See Fed. R. Civ. P. 4(k)(1)(A); Janmark, Inc. v. Reidy, 132 F.3d 1200, 1201 (7th Cir. 1997). Thus, I must decide whether defendant is subject to personal jurisdiction under Wisconsin's long-arm statute and, if so, whether exercising jurisdiction under the statute is consistent with due process. Shepherd Invs. Int'l, Ltd. v. Verizon Commc'ns Inc., 373 F. Supp. 2d 853, 860 (E.D. Wis. 2005).

-3-

Plaintiff argues that § 801.05(4) of Wisconsin's long-arm statute confers personal jurisdiction over defendant. Section 801.05(4) provides:

> **(4)** LOCAL INJURY; FOREIGN ACT. In any action claiming injury to person or property within this state arising out of an act or omission outside this state by the defendant, provided in addition, either:
> (a) Solicitation or service activities were carried on within this state by or on behalf of the defendant; or
> (b) Products, materials or things processed, serviced or manufactured by the defendant were used or consumed within this state in the ordinary course of trade.

As applied to the present case, § 801.05(4) requires: (1) alleged injury to person or property within Wisconsin (2) arising out of an act or omission of the defendant committed outside Wisconsin, and (3) at the time of the alleged injury, products, materials or things processed, serviced or manufactured by defendant were used or consumed within this state in the ordinary course of trade.

Here, all three requirements are satisfied. First, a copyright is an intangible, incorporeal right that has no situs apart from the domicile of the proprietor. 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 12.01[C] (1963). Plaintiff is the proprietor and is domiciled in Wisconsin. (Compl. ¶ 3.) Further, the majority of economic activity associated with her copyright occurred at Wisconsin retail outlets. (See Ex. 1 to Def.'s Reply Br.)[3] Thus, defendant's alleged infringement of plaintiff's copyright caused injury to property within Wisconsin. See Indianapolis Colts, Inc. v. Metro. Baltimore Football Club Ltd. P'ship, 34 F.3d 410, 411-12 (7th Cir. 1994) (stating that injury to intellectual property occurs mainly

---

[3]Exhibit 1 to defendant's reply brief consists of plaintiff's responses to defendant's interrogatories. In her response to Interrogatory No. 6, plaintiff identifies the stores at which she has sold her book. The vast majority are located in Wisconsin. A few are located in Michigan's upper peninsula.

-4-

where the intellectual property is used). Second, the alleged injury was caused by defendant's acts or omissions outside Wisconsin – namely, copying and distributing plaintiff's book without authorization.

Third, plaintiff has produced evidence establishing a prima facie case that at the time of the alleged injury, products, materials or things processed, serviced or manufactured by defendant – books[4] – were used or consumed within this state in the ordinary course of trade. Defendant has an established distribution channel running from Indiana to Wisconsin. (See Ex. 2 to Def.'s Reply Br.)[5] Defendant employs a "print on demand" method, which involves printing and shipping copies of a book when an order is placed. Under this method, a retailer places an order for a specific quantity of a particular book with defendant's distributor. The distributor then contacts defendant's printer, and the printer prints the books and sends them to the retailer. The fact that Malmberg easily purchased books printed by defendant indicates that defendant's distribution channel extends to Wisconsin in the ordinary course of business. Even ignoring Malmberg's purchase of a book through Amazon.com, she obtained copies of plaintiff's book from three separate retail outlets in Wisconsin. Although some of the retailers

---

[4] Defendant does not dispute plaintiff's contention that the copying and distribution of books constitutes the processing, servicing or manufacturing of a product, material or thing. Therefore, I will assume that it does and not discuss this issue further.

[5] Exhibit 2 is the Supplemental Affidavit of Eugene Hopkins, who is defendant's "Client Services Manager." The affidavit explains defendant's distribution system. The information in the affidavit is somewhat sparse. The parties might have developed a fuller record with respect to defendant's operations. For instance, defendant describes itself as a "self-publishing" service, not a traditional publisher. See generally http://www.authorhouse.com. The differences in how self-publishers and traditional publishers do business might be significant for personal jurisdiction. Nonetheless, since neither party emphasizes the differences between self-publishers and traditional publishers, I assume that such differences are not significant to the present personal jurisdiction analysis.

-5-

had to obtain the book through special order, that they were able to do so shows that defendant's distribution channel flows into Wisconsin. Further, resolving all disputes in the affidavits in plaintiff's favor, at least one store in Wisconsin had a copy of the book in stock when Malmberg sought to find it. Finally, there is no evidence that these Wisconsin sales were isolated occurrences. It is reasonable to infer that if Malmberg can obtain books from defendant in the ordinary course of business, so can other consumers,[6] and defendant has submitted no evidence suggesting that it made no sales to Wisconsin customers other than those to Malmberg.[7] Therefore, drawing all reasonable inferences in plaintiff's favor, I find that plaintiff has raised a prima facie case of jurisdiction under Wisconsin's long-arm statute.

I turn next to whether exercising jurisdiction comports with due process. Due process limits when a state may exercise personal jurisdiction over a nonresident defendant. Jennings v. AC Hydraulic A/S, 383 F.3d 546, 549 (7th Cir. 2004). This limitation allows potential defendants to structure their contacts with different forums so as to plan where their business activities will and will not render them liable to suit. Id. (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73 (1985); World-Wide Volkswagen v. Woodson, 444 U.S. 286, 297 (1980)). Personal jurisdiction comes in two forms, so-called "general" and "specific" jurisdiction. Id. (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408 (1984)). Specific jurisdiction exists when the litigation arises out of or is related to the

---

[6]Cf. LG Elecs., Inc. v. Quanta Computer Inc., 520 F. Supp. 2d 1061, 1068 (W.D. Wis. 2007) (finding that plaintiff's counsel's ability to purchase infringing products in Wisconsin was evidence of their general availability to Wisconsin consumers).

[7]I consider not just plaintiff's book, but all books copied and distributed under defendant's authority. The relevant question under the long-arm statute is whether the defendant's products were used or consumed in the state, not whether the specific product at issue in the litigation was used or consumed in the state. Wis. Stat. § 801.05(4)(b).

-6-

defendant's contacts with the forum state. Shepherd Invs. Int'l, 373 F. Supp. 2d at 860. General jurisdiction allows the court to entertain any action against the defendant regardless of its subject matter. Id.

Plaintiff argues that Wisconsin can exercise specific jurisdiction over defendant consistent with due process. Under the due process analysis, plaintiff must first show that defendant purposefully availed itself of the privilege of conducting activities within the state. Jennings, 383 F.3d at 549. If plaintiff makes this showing, defendant can still defeat the exercise of personal jurisdiction by showing that such exercise would not comport with "traditional notions of fair play and substantial justice." Id. (citing Asahi Metal Indus. Co. v. Superior Court of California, 480 U.S. 102, 113 (1987)).

In the present case, plaintiff has made out a prima facie case of specific jurisdiction. Defendant has purposefully availed itself of the privilege of conducting business in Wisconsin by selling books to Wisconsin consumers through its "print on demand" distribution channel. As explained, if a retailer in Wisconsin wants a book published by defendant, it places an order through defendant's distributor, who then contacts defendant's printer, who then prints the book and ships it to the retailer. Defendant authorizes these activities and receives reports from its printers and distributors summarizing their sales activity. (Ex. 2 to Def.'s Reply Br. at ¶ 5.) Thus, defendant has an established distribution channel for servicing Wisconsin customers in the ordinary course of its business. It therefore has purposefully availed itself of the privilege of conducting business in Wisconsin.

Defendant argues to the contrary, asserting that in a print on demand system, the customer is "responsible" for the sale. In its view, Malmberg was "responsible" for the sales made through its distribution channel because she placed the orders for plaintiff's books.

-7-

However, the fact that Malmberg was in some sense responsible for the sales made to her does not preclude personal jurisdiction over defendant. Malmberg could not have purchased defendant's books in Wisconsin if defendant had not maintained a distribution channel flowing into Wisconsin. The sales to Malmberg indicate the existence of such a channel and that other customers are probably using it.[8] Unlike in World Wide Volkswagen, the customer in the present case did not unilaterally bring the defendant's product into the state without any action on the defendant's part directed toward the state. 444 U.S. at 298. Malmberg did not travel to Indiana, purchase defendant's books and then bring them into Wisconsin in an effort to create an injury here. Rather, defendant, through its distributors and printers, knowingly maintained an open channel through which its books could be sold directly to Wisconsin retailers, thereby purposefully availing itself of the privilege of doing business in Wisconsin. See Asahi Metal, 480 U.S. at 112-13 (opinion of O'Connor, J.) (due process permits exercise of personal jurisdiction when defendant "create[s], control[s], or employ[s] the distribution system" that brings its products into the forum).[9]

---

[8] Had defendant submitted an affidavit stating that it made no sales to Wisconsin customers other than to Malmberg, this might be a different case. However, based on the present record and drawing all reasonable inferences in plaintiff's favor, I infer that defendant made other book sales through its Wisconsin distribution channel. To be sure, defendant's affidavit states that "AuthorHouse does not intentionally market its products and services to Wisconsin residents" (Amended Hopkins Aff. at ¶ 6), but the fact that it does not intentionally market in Wisconsin does not mean that it makes no sales in Wisconsin. I also note that defendant's website indicates that defendant is "the world's largest self-publishing company" and has printed over 2 million books. The website also tells prospective authors that if they sign up with defendant, their books will be "available to over 25,000 bookstores and online." See http://www.authorhouse.com (click "About Us" and then continue to scroll through "next" hyperlinks) (last visited July 16, 2008). These statements strongly suggest that defendant has made many sales to Wisconsin customers.

[9] Although defendant and its distributors and printers are distinct legal entities, a "forum State does not exceed its powers under the Due Process Clause if it asserts personal

-8-

Finally, the exercise of personal jurisdiction over defendant by a Wisconsin court would comport with notions of fair play and substantial justice. Defendant argues that the parties' prior history means that the plaintiff can only sue defendant in Indiana. Defendant cites the arbitration clause of the distribution agreement, which requires arbitration in Indiana. But the parties had terminated the distribution agreement before plaintiff filed the present suit. Thus, the arbitration clause is without effect. Further, the settlement agreement, which terminated the distribution agreement, does not contain a forum selection clause. The fact that the distribution agreement contained a forum selection clause but the settlement agreement does not suggests that the parties no longer regard Indiana as the exclusive forum for resolving their disputes. Thus, the parties' prior history shows only that plaintiff might be subject to personal jurisdiction in Indiana based on her entering into a contract with defendant that had a substantial connection with Indiana.[10] Cf. Burger King, 471 U.S. at 479. This history does nothing to negate the fact that Wisconsin has personal jurisdiction by virtue of defendant's

---

jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." World Wide Volkswagen, 444 U.S. at 297-98. Although the Supreme Court cast a cloud over the stream of commerce theory in its fractured opinion in Asahi Metal, the Seventh Circuit has indicated that theory is alive and well. Dehmlow v. Austin Fireworks, 963 F.2d 941, 946-47 (7th Cir. 1992) ("Because the Supreme Court established the stream of commerce theory, and a majority of the Court has not yet rejected it, we consider the theory to be determinative."). Here, defendant placed its books into the stream of commerce by delegating its printing and sales functions to its printers and distributors. Defendant expected that the books printed and distributed by these entities would be distributed in all of the states they serviced. Nothing in the record indicates that it did not know that its distributors and printers serviced the Wisconsin market, or that it took any actions to prevent its books from reaching Wisconsin. Thus, by doing business through its distributors and printers, defendant expected that Wisconsin consumers would purchase its books.

[10] I of course take no position on whether plaintiff is in fact subject to personal jurisdiction in Indiana.

-9-

distribution channel. Accordingly, defendant's motion to dismiss for lack of personal jurisdiction is denied.

### III. VENUE

Defendant also moves to dismiss for improper venue pursuant to Fed. R. Civ. P. 12(b)(3). Venue in a copyright case is governed by 28 U.S.C. § 1400(a), which provides that venue lies in any district "in which the defendant or his agent resides or may be found." Pursuant to 28 U.S.C. § 1391(c), a defendant that is a corporation is deemed to "reside" in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. When a state has more than one judicial district, as Wisconsin does, the venue inquiry asks whether the defendant would be subject to personal jurisdiction in the chosen judicial district if that district were considered its own state. 28 U.S.C. § 1391(c). In the present case, defendant is subject to personal jurisdiction in the Eastern District of Wisconsin because the distribution channel described above flows into this district, as evidenced by Malmberg's purchases here. Therefore, the motion to dismiss for improper venue is denied.

### IV. FAILURE TO STATE A CLAIM

Defendant also moves to dismiss on the ground that plaintiff fails to state a claim upon which relief may be granted. See Fed. R. Civ. P. 12(b)(6). Technically, defendant's argument is not that plaintiff fails to state a claim but that defendant has an affirmative defense that can be resolved at the pleading stage. See Xechem, Inc. v. Bristol-Myers Squibb Co., 372 F.3d 899, 901 (7th Cir. 2004) (explaining that existence of meritorious affirmative defense does not equate to failure to state a claim upon which relief may be granted). Specifically, defendant points to language in the parties' settlement agreement suggesting that plaintiff already

-10-

released it from any liability for copyright infringement. To properly raise this issue, defendant should have answered the complaint, which easily states a claim for copyright infringement, and pleaded the release as an affirmative defense. See Fed. R. Civ. P. 8(c)(1) (listing "release" as affirmative defense); Deckard v. General Motors Corp., 307 F.3d 556, 560 (7th Cir. 2002) (release is an affirmative defense not properly raised in Rule 12(b)(6) motion). See also McCready v. eBay, Inc., 453 F.3d 882, 892 n.2 (7th Cir. 2006); Mosely v. Bd. of Educ. of the City of Chicago, 434 F.3d 527, 533 (7th Cir. 2006). If plaintiff did not dispute the facts surrounding the release, defendant could then have moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12. Mosely, 434 F.3d at 533.

Plaintiff, however, does not object to my considering the merits of defendant's affirmative defense pursuant to a 12(b)(6) motion. Moreover, courts may take the short-cut of resolving an affirmative defense pursuant to a 12(b)(6) motion where the plaintiff pleads herself into the defense and either the facts relating to the defense are not disputed or the plaintiff does not contend that further discovery or a trial is necessary to resolve the matter. See McCready, 453 F.3d at 892 n.2; Mosely, 434 F.3d at 533; Xechem, 372 F.3d at 901. Here, plaintiff attached the relevant contractual language to her complaint, making it part of her pleading and thereby pleading herself into defendant's defense. See Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Further, plaintiff has not asked to conduct discovery with respect to the defense. Therefore, I will address the merits of defendant's argument.

Defendant argues that the settlement agreement contains a release that bars the present action. The relevant language provides:

-11-

> 5. **Release of AuthorHouse**. Sullivan and her successors, assigns and relations release and forever discharge AuthorHouse, its successors, predecessors, assigns and relations, their employees, officers, directors, representatives, agents and any related entities, and all others liable or who could be liable, from any and all claims, demands and causes of action, past or future, asserted or unasserted, known or unknown, including, but not limited to, those for bodily injury, personal injury, pain and suffering, emotional and mental distress, lost income or wages, property damages, punitive or exemplary damages, contractual claims, and any and <u>all</u> damages, injuries, claims, demands and causes of action of any kind in any way resulting from or arising out of the [Distribution] Agreement.

(Settlement Agreement ¶ 5.) Defendant argues that because plaintiff released it from "any and all claims, demands and causes of action, past or future, asserted or unasserted, known or unknown," plaintiff has released it from the present suit for copyright infringement, which at the time that the parties executed the settlement agreement was a "future," "unknown," and "unasserted" "claim, demand or cause of action." The settlement agreement chooses Indiana law, and thus I turn to whether Indiana law supports defendant's interpretation.

Indiana courts interpret releases as they do ordinary contracts. <u>See</u>, <u>e.g.</u>, <u>Dick Corp. v. Geiger</u>, 783 N.E.2d 368, 374 (Ind. Ct. App. 2003). "The cardinal rule of contract interpretation is to ascertain the intent of the parties, as expressed in the language used, and to give effect to that intention, if it can be done consistent with legal principles." <u>Evansville-Vanderburgh Sch. Corp. v. Moll</u>, 344 N.E.2d 831, 837 (Ind. 1976) (internal quotation marks and citation omitted). Importantly, in ascertaining the parties' intent, Indiana courts are careful to read the contract as a whole, and will not read individual words, clauses, sentences or paragraphs in isolation. <u>Dick Corp.</u>, 783 N.E.2d at 374 ("The meaning of a contract is to be determined from an examination of all of its provisions, not from a consideration of individual words, phrases, or even paragraphs read alone."). Thus, "[t]he true meaning of a contract is to be ascertained from a consideration of all its provisions, and a liberal or technical

-12-

construction of an isolated clause should not be indulged to defeat the true meaning." Allied Structural Steel Co. v. State, 265 N.E.2d 49, 52 (Ind. Ct. App. 1970). See also Evansville-Vanderburgh, 344 N.E.2d at 837; Sindlinger v. Dep't of Fin. Inst., 199 N.E. 715, 724 (Ind. 1936); McClain's Estate v. McClain, 183 N.E.2d 842, 847-48 (Ind. Ct. App. 1962).

In the present case, defendant's interpretation of the release depends on a liberal and technical construction of an isolated clause that is contrary to the parties' intent, as expressed by the contract as a whole. Taken to its extreme, defendant's interpretation would mean that plaintiff permanently surrendered her right to sue defendant for anything. Defendant could perpetually infringe plaintiff's copyright, defame her and intentionally interfere with her relationships with other publishers, and plaintiff could not bring a civil action in response. This interpretation is certainly hard to swallow, and it is doubtful that this is the result that the parties had in mind when they executed the release. Indeed, the sentence on which defendant relies ends by describing the released claims as those "resulting from or arising out of the Agreement." (Settlement Agreement ¶ 5.) Defendant counters that the earlier phrase "including, but not limited to" expands the scope of the release to any and all claims that plaintiff could ever have against defendant. However, other provisions of the settlement agreement negate this interpretation of the "including, but not limited to" language.

First, paragraph six of the settlement agreement states that defendant's settlement payment "is in full accord and satisfaction of any and all disputed claims against Sullivan relating to the [Distribution] Agreement." (Emphasis added.) Because this paragraph does not add that the payment is also made to satisfy unknown future claims, it reinforces the notion that the parties intended to resolve only claims arising out of the distribution agreement. Second, and perhaps most importantly, paragraph nine states that the recitals

-13-

in the settlement agreement "are incorporated herein and form an integral part of this Settlement Agreement." The recitals, in turn, contain an unequivocal expression of the parties' intent, which was to resolve all claims "with respect to the [Distribution] Agreement." (Paragraph D of Recitals.) Nothing in the recitals suggests that plaintiff released claims unrelated to the distribution agreement.

Considering the settlement agreement as a whole, it is clear that the parties intended to limit plaintiff's release to those claims arising out of the distribution agreement. Thus, the "including, but not limited to" language is best understood as ensuring that plaintiff released every conceivable claim arising out of the distribution agreement, not as expanding the release to the point of total immunity. Had the parties intended such a sweeping release, they could have used much clearer language to express their intent, as did the parties in Orme v. Estate of Kruwell, 453 N.E.2d 355, 356 (Ind. Ct. App. 1983), who executed a release stating:

> It is expressly agreed that the settlement herein provided for . . . shall be a full and complete release of any claims involved in this litigation or otherwise between said parties, <u>it being the purpose of said release to put to rest all claims of every kind or character which now exists between said parties or which may hereafter arise between them</u> . . . .

Id. (alterations in original, emphasis added). Accordingly, defendant's motion to dismiss for failure to state a claim upon which relief may be granted is denied.

## V. CONCLUSION

For the reasons stated,

**IT IS ORDERED** that defendant's motion to dismiss (Docket ## 7 & 12), is **DENIED**. Pursuant to Fed. R. Civ. P. 12(a)(4)(A), defendant's answer must be filed and served within ten days.

Dated at Milwaukee, Wisconsin, this 23 day of July, 2008.

/s_____
LYNN ADELMAN
District Court Judge